UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

MID CENTRAL OPERATING ENGINEERS )
HEALTH AND WELFARE FUND, )
 )
    Plaintiff, )
 )
    v. ) No. 2:24-cv-00326-JPH-MJD
 )
HOOSIERVAC LLC, )
 )
    Defendant. )

**REPORT AND RECOMMENDATION**

On October 29, 2024, attorney Rafael Ramirez filed a brief in support of Defendant's

Motion to Reconsider the Court's Denial of Motion to Transfer. [Dkt. 65.] In that brief, Mr.

Ramirez cited to *In re Cook County Treasurer*, 773 F.3d 834 (7th Cir. 2014)—a case the

Undersigned was unable to locate. In response to the Undersigned's Order to file a Notice with

the correct citation, [Dkt. 82], Mr. Ramirez filed a Notice in which he stated that he was unable

to locate the case, "acknowledge[d] that the referenced citation was in error," "withdr[ew] the

previously cited authority[,] and apologize[d] to the Court and opposing counsel for the

confusion." [Dkt. 86 at 1.]

On December 23, 2024, the Undersigned explained that "filing a brief with a non-existent

citation falls far short of an attorney's duty to the Court, his client, and opposing counsel." [Dkt.

87.] Accordingly, pursuant to Federal Rule of Civil Procedure 11(c)(3), the Undersigned ordered

Mr. Ramirez to appear in-person and show cause why he should not be sanctioned for violating

Federal Rule of Civil Procedure 11(b). *Id.* In that Order, the Undersigned noted that a non-

exhaustive review of Mr. Ramirez's other filings in this case revealed citations in two other briefs that the Undersigned was unable to locate: *Knoedler Manufactuers, Inc. v. Cox*, 545 F.2d 1033, 1035 (7th Cir. 1976), cited in [Dkt. 39]; and *Brown v. Local 58, IBEW*, 628 F.2d 441 (6th Cir. 1980), cited in [Dkt. 52].

On January 3, 2025, the parties in this matter appeared by counsel for a hearing on the Order to Show Cause. [Dkt. 88.] Mr. Ramirez admitted that he had relied on programs utilizing generative artificial intelligence ("AI") to draft the briefs. Mr. Ramirez explained that he had used AI before to assist with legal matters, such as drafting agreements, and did not know that AI was capable of generating fictitious cases and citations. These "hallucination cites," Mr. Ramirez asserted, included text excerpts which appeared to be credible. As such, Mr. Ramirez did not conduct any further research, nor did he make any attempt to verify the existence of the generated citations. Mr. Ramirez reported that he has since taken continuing legal education courses on the topic of AI use and continues to use AI products which he has been assured will not produce "hallucination cites." Mr. Ramirez agreed during the hearing that he did not fully comply with Rule 11, but he emphasized that at no point did he act in bad faith or proceed with malice.

## I. Federal Rule of Civil Procedure 11

Rule 11 provides in relevant part:

**(b) Representations to the Court.** By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

. . .

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; . . . .

Fed. R. Civ. P. 11(b). The Court may, *sua sponte*, order an attorney to show cause why conduct specifically described in the order has not violated Rule 11(b). Fed. R. Civ. P. 11(c)(3). If the Court then determines that Rule 11(b) has been violated, the Court may impose an appropriate sanction on that attorney. Fed. R. Civ. P. 11(c)(1). An order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction. Fed. R. Civ. P. 11(c)(6).

"The standard for imposing sanctions under Rule 11 is an objective determination of whether a sanctioned party's conduct was reasonable under the circumstances." *Brown v. Fed'n of State Med. Boards of the U.S.*, 830 F.2d 1429, 1435 (7th Cir. 1987) (collecting cases), *overruled on other grounds by Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928 (7th Cir. 1989). One specific inquiry for determining whether sanctions are appropriate is "whether the party or attorney made a reasonable inquiry into the law." *Id.*; *see* Fed. R. Civ. P. 11(b)(2). Indeed:

> Rule 11 requires counsel to study the law before representing its contents to a federal court. An empty head but a pure heart is no defense. The Rule requires counsel to read and consider before litigating. Counsel who puts the burden of study and illumination on the defendants or the court must expect to pay attorneys' fees under the Rule.

*Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir.), *cert. denied,* 479 U.S. 851 (1986) (internal citations omitted) (emphasis in original).

Courts have consistently held that failing to check the treatment and soundness—let alone the existence—of a case warrants sanctions. *See, e.g.*, *Salahuddin v. Coughlin*, 999 F. Supp. 526, 529 (S.D.N.Y. 1998) (noting that Shepardizing would have led defense counsel to a key case); *Brown v. Lincoln Towing Serv.*, No. 88C0831, 1988 WL 93950 (N.D. Ill. 1988) (imposing sanctions where the attorney filed a claim based on an expired federal statute); *Pravic v. U.S. Indus.-Clearing*, 109 F.R.D. 620, 623 (E.D. Mich. 1986) (holding that the act of relying on another attorney's memorandum without Shepardizing the cases cited warranted

sanctions); *Blake v. Nat'l Cas. Co.*, 607 F. Supp. 189, 191 (C.D. Ca. 1984) (noting that Shepardizing cases already cited would have led to controlling authority).

The arrival of modern legal research tools implementing features such as Westlaw's KeyCite and Lexis's Shephardization has enabled attorneys to easily fulfill this basic duty. There is simply no reason for an attorney to fail to fulfill this obligation. Such has been the view for decades: "It is really inexcusable for any lawyer to fail, as a matter of routine, to Shepardize all cited cases (a process that has been made much simpler today than it was in the past, given the facility for doing so under Westlaw or LEXIS)." *Gosnell v. Rentokil, Inc.*, 175 F.R.D. 508, 510 n.1 (N.D. Ill. 1997). It is one thing to use AI to assist with initial research, and even non-legal AI programs may provide a helpful 30,000-foot view. It is an entirely different thing, however, to rely on the output of a generative AI program without verifying the current treatment or validity—or, indeed, the very existence—of the case presented. Confirming a case is good law is a basic, routine matter and something to be expected from a practicing attorney. As noted in the case of an expert witness, an individual's "citation to fake, AI-generated sources . . . shatters his credibility." *See Kohls v. Ellison*, No. 0:24-cv-03754-LMP-DLM, Doc. 46 at *10 (D. Minn. Jan. 10, 2025).

It is abundantly clear that Mr. Ramirez did not make the requisite reasonable inquiry into the law. Had he expended even minimal effort to do so, he would have discovered that the AI-generated cases do not exist. That the AI-generated excerpts appeared valid to Mr. Ramirez does not relieve him of his duty to conduct a reasonable inquiry. *Ordower v. Feldman*, 826 F.2d 1569, 1574 (7th Cir. 1987) ("Good faith is not a defense to the imposition of Rule 11 sanctions.").

Monetary sanctions ranging from $2,000 to $5,000 have been found appropriate in similar contexts to the present. *See, e.g.*, *Gauthier v. Goodyear Tire & Rubber Co.*, No. 1:23-CV-

281, 2024 WL 4882651 (E.D. Tex. Nov. 25, 2024) (issuing a $2,000 penalty to attorney who admitted to using AI to generate cases and failed to verify the content); *Mortazavi v. Booz Allen Hamilton, Inc.*, No. 2:24-CV-07189-SB-RAO, 2024 WL 4308032 (C.D. Cal. Sept. 26, 2024) (issuing a $2,500 penalty to attorney who failed to disclose the use of artificial intelligence and included a citation to a nonexistent case); *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443 (S.D.N.Y. 2023) (sanctioning attorneys for $5,000 when they used AI to generate an excerpt of an opinion which did not exist).

In imposing sanctions, a court must keep in mind the basic principle that "[i]n choosing a sanction . . . 'the least severe sanction [that is] adequate to serve the purpose should be imposed.'" *Brown*, 830 F.2d at 1437 (quoting *Cabell v. Petty,* 810 F.2d 463, 466 (4th Cir.1987) (footnote omitted) (quoting Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look,* 104 F.R.D. 181, 201 (1985))). One such purpose is to impose costs on the careless or reckless lawyer who unnecessarily burdened opposing counsel or the court. *See Thornton*, 787 F.2d at 1154. While compensation is an important consideration in issuing sanctions, "[a]n even more important purpose is deterrence." *Brown*, 830 F.2d at 1438; *see* Fed. R. Civ. P. 11(c)(4). As the penalties described above have evidently failed to act as a deterrent, given Mr. Ramirez's actions in this case, the Undersigned **RECOMMENDS** that Mr. Ramirez be sanctioned $15,000 for his violations in this case—$5,000 for each of the three briefs filed by Mr. Ramirez where he failed to appropriately verify the validity and accuracy of the case law he cited to the Court and opposing counsel.[1]

---

[1] Plaintiff requested during the show cause hearing that any sanctions imposed on Mr. Ramirez be used to reimburse Plaintiff for its counsel's additional expenditure of time in responding to Mr. Ramirez's briefs. However, the applicable Rule does not permit the Court to do so *sua sponte*. *See* Fed. R. Civ. Pro. 11(c)(4) (permitting an award of fees as part of sanctions "if imposed on motion").

While this amount is at the higher end of the sanctions that have previously been imposed for similar conduct, Mr. Ramirez's professed ignorance of the propensity of the AI tools he was using to "hallucinate" citations is evidence that those lesser sanctions have been insufficient to deter the conduct. Whether a case cite is obtained from a law review article, a hornbook, or through independent legal research, the duty to ensure that any case cited to a court is "good law" is nearly as old as the practice of law. The development of resources such as the Shephard's citation system provided lawyers a tool to accomplish that most basic of tasks.[2] It is Mr. Ramirez's failure to comply with that most basic of requirements that makes his conduct particularly sanctionable.

The Seventh Circuit warns courts "not to chill either creativity or objectively reasonable efforts to extend or change the law." *Brown*, 830 F.2d at 1437. The Undersigned does not aim to suggest that AI is inherently bad or that its use by lawyers should be forbidden. The Undersigned has long been a very vocal advocate for the use of technology in the legal profession. Nevertheless, much like a chain saw or other useful by potentially dangerous tools, one must understand the tools they are using and use those tools with caution. It should go without saying that any use of artificial intelligence must be consistent with counsel's ethical and professional obligations.  In other words, the use of artificial intelligence must be accompanied by the application of actual intelligence in its execution.

## II. Indiana Rules of Professional Conduct

The District Court for the Southern District of Indiana holds attorneys to the ethical obligations set forth in the Indiana Rules of Professional Conduct. Local R. 83-5(f). "When

---

[2] Frank Shepard introduced his print citation index in the 1870s, though other precursor citation series had existed since the early nineteenth century. *See* Laura C. Dabney, *Citators: Past, Present, and Future*, 27 Legal Reference Servs. Q. 165, 166 (2008).

misconduct or allegations of misconduct that, if substantiated, would warrant discipline of an

attorney who is a member of the bar of the court or has practiced in the court come to the

attention of a judicial officer, including a bankruptcy judge or a magistrate judge, whether by

complaint or otherwise, the judicial officer may refer the matter to the Chief Judge." Local R. of

Disciplinary Enf't 2(a). "The Chief Judge may then refer the matter to one or more of the

following:

> (1) the Indiana Attorney Disciplinary Commission for investigation and
>     prosecution,
> (2) another disciplinary authority having jurisdiction over the attorney,
> (3) the Department of Justice or other law enforcement agency, or
> (4) recruited counsel for investigation and the formulation of a recommendation
>     for further action."

*Id.* At least three of the Indiana Rules of Professional Conduct are implicated here, and the

Undersigned will address them each in turn.

## A. Rule 1.1. Competence

"A lawyer shall provide competent representation to a client. Competent representation

requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the

representation." Ind. R. of Prof. Conduct 1.1. It is clear that Mr. Ramirez failed to provide

competent representation when he submitted false legal bases to the Court. These actions flouted

the requisite legal knowledge, skill, preparation, and especially thoroughness reasonably

necessary for Mr. Ramirez's representation of his client.

## B. Rule 3.1. Meritorious Claims and Contentions

"A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein,

unless there is a basis in law and fact for doing so that is not frivolous, which includes a good

faith argument for an extension, modification or reversal of existing law." Ind. R. of Prof.

Conduct 3.1. This Rule mirrors the requirements of Rule 11(b)(2), and likewise proscribes presenting unfounded legal bases. There is no merit in relying on non-existent cases, so Mr. Ramirez's conduct clearly disregards this Rule.

### C. Rule 3.3. Candor Toward the Tribunal

"A lawyer shall not knowingly: . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." Ind. R. of Prof. Conduct 3.3(a)(1). It is undisputed that Mr. Ramirez made false statements of law to the Court when in three separate submissions he relied on at least three cases which do not exist. Moreover, Mr. Ramirez did so "knowingly"—he knowingly failed to fulfill his duty of verifying that the law he presented was "good law." As such, the Undersigned believes that discipline for violation of Indiana Rule of Professional Conduct 3.3 is appropriate as well.

### III. Conclusion

For the reasons set forth above, the Undersigned, in his discretion, hereby **RECOMMENDS** that Mr. Ramirez be personally **SANCTIONED** in the amount of $15,000 pursuant to Federal Rule of Civil Procedure 11 for submitting to the Court and opposing counsel, on three separate occasions, briefs that contained citations to non-existent cases. In addition, the Undersigned **REFERS** the matter of Mr. Ramirez's misconduct in this case to the Chief Judge pursuant to Local Rule of Disciplinary Enforcement 2(a) for consideration of any further discipline that may be appropriate.

Mr. Ramirez is **ORDERED** to provide a copy of this order to the chief executive officer of his client, HoosierVac LLC, and to file a certification that he has done so within seven days of the date of this order.

Any objections to this Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

SO ORDERED.

Dated:  21 FEB 2025

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all ECF-
registered counsel of record via email generated
by the Court's ECF system

Chief Judge Tanya Walton Pratt