UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

MID CENTRAL OPERATING ENGINEERS )
HEALTH AND WELFARE FUND, )
STEPHEN SCOTT Trustee, )
)
          Plaintiffs, )
)
          v. )    No. 2:24-cv-00326-JPH-MJD
)
HOOSIERVAC LLC, )
)
          Defendant. )

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

HoosierVac, LLC agreed to pay benefit contributions on behalf of employees to Mid Central Operating Engineers Health and Welfare Fund.  In late 2023, the Fund selected HoosierVac for a random audit, but after several months HoosierVac stopped complying with the auditor's record requests. Plaintiffs have filed a motion for summary judgment on its claim that HoosierVac must comply with the audit.  Dkt. [127].  Because the governing contracts require HoosierVac to comply, Plaintiffs' motion is **GRANTED**.

**I.**
**Facts and Background**

Because Plaintiffs have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).

The Mid Central Operating Engineers Health and Welfare Fund provides benefits to employees in certain local-union jurisdictions of the International

1

Union of Operating Engineers. Dkt. 128-13 at 2. The Fund receives monthly benefit contributions from multiple employers under collective bargaining agreements ("CBA") between unions and employers. *Id.* at 3. Those contributions are normally calculated from employers' self-reporting and information from employees and their unions. *Id.* But the Fund also randomly audits two employers each month. *Id.* In September 2023, HoosierVac was selected for random audit. *Id.* at 5.

HoosierVac is a hydro excavation company that uses customized trucks to "dig up dirt" with pressurized water. Dkt. 128-14 at 11, 64 (Mullins Dep. at 15, 123). HoosierVac's truck operators are members of the Operating Engineers Local 103. *Id.* at 19–20 (Dep. at 23–24). Local 103 and HoosierVac are parties to a CBA, which HoosierVac joined by signing a Consent to Agreements. Dkt. 128-3. In the Consent to Agreements, HoosierVac agreed to make payments to the Fund. *Id.* at 2. HoosierVac also signed the Fund's Participation Agreement, agreeing that the Fund's "Trustees shall have the authority to have their accountant audit all payroll and wage, job, bonds, and other relevant records of the Employer upon reasonable notice for the purpose of determining the accuracy of [HoosierVac's] contributions to the Fund." Dkt. 128-5 at 2.

The audit of HoosierVac's records and contributions began around November 2023. *See* dkt. 128-14 at 27 (Mullins Dep. at 31). Since April 2024, however, HoosierVac has refused to provide requested records necessary for completing the audit. *See* dkt. 128-11; dkt. 128-13 at 5–6. In June 2024, the

2

Fund and one of its trustees—Stephen Scott—brought this case against HoosierVac seeking "[a]n order requiring [HoosierVac] to allow the Fund to conduct a full audit of its books and records."  Dkt. 1.

## II.
## Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor."  *Zerante*, 555 F.3d at 584 (citation omitted).

## III.
## Analysis

"The Employee Retirement Income Security Act of 1974 ('ERISA') governs benefit plans between labor unions and multiemployer associations" that operate as trusts to provide employee benefits.  *Electrical Constr. Indus. Prefunding Credit Reimb. Program v. Veterans Elec., LLC*, 941 F.3d 311, 313 (7th Cir. 2019).  "As association members, employers agree to be bound" by a

CBA that provides benefits for union workers. *Id.* The unions then "set up trust agreements," and "[t]rustees may demand and examine pertinent employee records to effectively administer the trust." *Id.*

Here, the Fund argues that it's entitled to summary judgment because HoosierVac agreed to comply with audit requests in the CBA it joined, but then refused to comply. Dkt. 129 at 10–12. HoosierVac responds that there are disputed material facts about the validity of some of the contracts related to the CBA and that the Fund has exceeded the scope of its audit authority. Dkt. 131 at 9–16.

It's undisputed that HoosierVac joined a CBA with Local 103 by signing a Consent to Agreements on April 25, 2018. Dkt. 128-3 (Consent to Agreements signed by HoosierVac's President, Lauren Mullins); dkt. 128-14 at 14 (Mullins Dep. at 18). In that Consent to Agreements, HoosierVac "agree[d] to make the payments required by" existing and successor CBAs and "to be bound by all the terms and conditions of the Trust Agreements [c]reating the Trusts into which such payments are to be made." Dkt. 128-3 at 2 ¶ 2. It's also undisputed that, through the Consent to Agreements, HoosierVac was required to follow the 2018–2023 CBA with Local 103, dkt. 128-2, and its successor 2023–2026 CBA, dkt. 128-4. Dkt. 128-14 at 14–15 (Mullins Dep. at 18–19).

The 2023–2026 CBA with Local 103 requires HoosierVac to "pay monthly into a Health & Welfare Fund, known as 'Mid Central Operating Engineers Health & Welfare Fund,'" and into a Central Pension Fund. Dkt. 128-4 at 16–17. To facilitate its trust payments, HoosierVac signed a "Participation

4

Agreement" with the Fund on April 26, 2018, "agree[ing] to make contributions to the Fund . . . on behalf of all Employees, all as defined in the Trust Agreement or applicable [CBA]." Dkt. 128-5 at 2 ¶ 2.

In the Participation Agreement, HoosierVac also "agree[d]" that "the Trustees shall have the authority to have their accountant audit all payroll and all wage, job, bonds, and other relevant records of [HoosierVac] upon reasonable notice for the purpose of determining the accuracy of [HoosierVac's] contributions to the Fund." *Id.* at 2 ¶ 4. HoosierVac admits that it is required to follow this Participation Agreement. Dkt. 128-14 at 19 (Mullins Dep. at 23). The Fund has therefore shown as a matter of law that HoosierVac must comply with the Fund's audit.[1] *See Central States, Se & Sw Areas Pension Fund v. Central Transp., Inc.*, 472 U.S. 559, 581 (1985) ("Given Congress' vision of the proper administration of employee benefit plans under ERISA, we have little difficulty holding that the audit requested by Central States is well within the authority of the trustees as outlined in the trust documents."); *Veterans Elec.*, 941 F.3d at 315 (holding, under similar contractual language, that "the Funds had the right to conduct random audits on employer payroll records").

To complete its audit, the Fund requested payroll summary reports for HoosierVac's employee, Shawn Harter, and a list of HooserVac's transactions with vendors. Dkt. 128-13 at 6 (Hay Decl.); dkt. 128-10 (request letter from the

---

[1] The Court therefore does not address whether the Fund's Agreement and Declaration of Trust's separate audit provisions apply, *see* dkt. 129 at 10–11 (citing 128-6 at 15, 19), or HoosierVac's argument that it is not bound to the Agreement and Declaration of Trust, dkt. 131 at 9–10.

Fund's attorney to HoosierVac); *see* dkt. 128-11.  HoosierVac admits that it did not provide those documents.  Dkt. 128-14 at 57 (Mullins Dep. at 62).  Mr. Harter worked as an operator for HoosierVac, *id.* at 36–37 (Dep. at 40–41), and the Fund requested the vendor records to determine whether any work covered by a CBA may have been subcontracted to another company and not reported to the Fund, dkt. 128-9 at 3–4.  The records are therefore either "payroll . . . records" or "other relevant records of [HoosierVac]" for "determining the accuracy of [HoosierVac's] contributions to the Fund" under the Participation Agreement.  Dkt. 128-5 at 2 ¶ 4.  So the Fund is entitled to the requested records as a matter of law.  *Id.*; *see Veterans Electric*, 941 F.3d at 313 (Under ERISA, fund trustees "may demand and examine pertinent employer records to effectively administer the trust.").

HoosierVac's arguments do not show otherwise.  Even if there is a factual dispute about "whether Shawn Harter was an employee of [HoosierVac]" within the meaning of other agreements, dkt. 131 at 10–11, the Participation Agreement broadly entitles the Fund to "*all* payroll . . . records of the Employer," dkt. 128-5 at 2 ¶ 4.  Moreover, the Fund's entitlement to records about Mr. Harter does not necessarily mean HoosierVac is ultimately required to pay contributions for Mr. Harter's work—that is a separate question outside the Fund's argument for summary judgment on the issue of audit compliance. *See* dkt. 129 at 13 (requesting "an order requiring [HoosierVac] to comply with the remainder of the Fund's audit of its books and records").  The Fund therefore has not exceeded its audit authority.  Dkt. 131 at 12–16.

HoosierVac next argues that the audit breaches a fiduciary duty because it was part of two local unions' "unlawful scheme to eliminate" HoosierVac. Dkt. 131 at 13–16.  Even if HoosierVac were correct that there's an "unlawful scheme" against it and that the audit could benefit a local union in some way, there is no material factual dispute affecting its obligation to comply with the audit.  HoosierVac's evidence that one Local 103 employee threatened to "shut down" HoosierVac with audits does not allow a reasonable jury to find that he was speaking on behalf of or had any influence over the Fund.  *See* dkt. 132-3 at 4.  HoosierVac's speculation is not enough to dispute the Fund's evidence that HoosierVac was randomly selected for the audit independently of the local unions.  Dkt. 128-13 at 4–5 ¶ 16; *see Flowers v. Kia Motors Finance,* 105 F.4th 939, 946–47 (7th Cir. 2024) ("Speculation cannot create a genuine issue of fact that defeats summary judgment.").  Instead, the Supreme Court has explained that records like those the Fund requested are "highly relevant to the trust's legitimate interests," leaving "no doubt as the to the validity and weight of the audit goals" under ERISA.  *Central States*, 472 U.S. at 568, 571, 581.

Last, HoosierVac briefly argues that there are triable issues of fact on its affirmative defenses that it complied with "part of the audit" and that the audit was conducted in bad faith as part of a conspiracy. Dkt. 131 at 16–17.  But as explained above, HoosierVac admits that it has not complied with the Fund's document requests and relies on only speculation that the Fund is acting in a conspiracy with local unions.  The Fund is therefore entitled to summary judgment and an order compelling HoosierVac's compliance with the audit.

## IV.
## Conclusion

Plaintiffs' motion for summary judgment is **GRANTED**.  Dkt. [127].  The

**parties shall have April 16, 2026** to file a proposed permanent injunction

requiring compliance with the audit and a proposed final judgment.

**SO ORDERED.**

Date: 3/19/2026

*James Patrick Hanlon*

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel